# In the United States Court of Federal Claims

## No. 12-20T
### (Filed:  March 12, 2014)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |
|---|---|
| JOSEPH P. NACCHIO and ANNE M. ESKER, | **Income Tax Refund; Forfeited Income; 26 U.S.C. §§ 162, 165, 1341; Deduction of Loss; Business Expense; Nondeductible Fine or Similar Penalty under 26 U.S.C. § 162(f); Claim of Right under 26 U.S.C. § 1341; Issue Preclusion.** |

JOSEPH P. NACCHIO and
ANNE M. ESKER,

      Plaintiffs,

v.

THE UNITED STATES,

      Defendant.

**Income Tax Refund; Forfeited Income; 26 U.S.C. §§ 162, 165, 1341; Deduction of Loss; Business Expense; Nondeductible Fine or Similar Penalty under 26 U.S.C. § 162(f); Claim of Right under 26 U.S.C. § 1341; Issue Preclusion.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    <u>William D. Lipkind</u> and <u>Thomas A. Gentile</u>, Lampf, Lipkind, Prupis & Petigrow, 80 Main Street, Suite 350, West Orange, NJ 07052, for Plaintiffs.

    <u>Kathryn M. Keneally</u> and <u>Jacob E. Christensen</u>, United States Department of Justice, Tax Division, Court of Federal Claims Section, P.O. Box 26, Ben Franklin Post Office, Washington, D.C. 20044, for Defendant.  <u>David I. Pincus</u>, United States Department of Justice, Tax Division, of Counsel.

_____

## OPINION AND ORDER
_____

**WILLIAMS**, Judge.

    Plaintiffs Joseph P. Nacchio and Anne M. Esker seek a refund of $17,974,832 in taxes they paid on gain Mr. Nacchio realized in 2001, but forfeited in 2007 when he was convicted for insider trading.

    This matter comes before the Court on Defendant's motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment.  To qualify for a tax refund under 26 U.S.C. § 1341, Plaintiffs must establish both that Mr. Nacchio believed he had a claim of right to gain included in Plaintiffs' 2001 joint return, and that they are entitled to deduct the amount

forfeited under a separate section of the Internal Revenue Code.  Plaintiffs invoke 26 U.S.C. §§ 162 and 165 to claim the forfeiture is deductible as a business expense or loss.[1]

The Government contends that because Mr. Nacchio's forfeiture was imposed as punishment for insider trading, permitting a deduction would contravene both public policy and the prohibition in § 162(f) against the deduction of a "fine or similar penalty" paid to the United States.  In addition, the Government submits that Plaintiffs cannot demonstrate that Mr. Nacchio believed that he had a bona fide claim to his 2001 trading gain because he was convicted of "willfully" violating securities laws.

The Court grants Plaintiffs' motion in part, finding that Plaintiffs may deduct the amounts forfeited as a loss under § 165.  Whether Mr. Nacchio believed he had a claim of right to the trading proceeds in 2001 is a genuine issue of material fact that cannot be resolved on summary judgment.

## Background[2]

### Plaintiffs' Joint Return Includes Net Gain From Mr. Nacchio's Sale of Qwest Stock

From 1997 to 2001, Mr. Nacchio served as the Chief Executive Officer ("CEO") of Qwest Communications International, Inc. ("Qwest").  Compl. ¶ 2, Jan. 10, 2012; see Def.'s Mot. Summ. J. ("Mot.") Ex. 1 ¶ 1, Mar. 1, 2013.  In lieu of cash, Mr. Nacchio received a large portion of his compensation as CEO in the form of stock options.  United States v. Nacchio, 519 F.3d 1140, 1146 (10th Cir. 2008), vacated in part on reh'g en banc, 555 F.3d 1234 (10th Cir. 2009).

In April 2001, when Qwest opened a "trading window" pursuant to company policy to allow its officers to sell Qwest stock, Mr. Nacchio exercised his options and sold 1,255,000 shares of Qwest stock.  Id. at 1147.  On May 16, 2001, Mr. Nacchio entered into an automatic

---

[1]  Hereinafter, unless otherwise indicated, all short form statutory citations refer to Title 26 of the United States Code ("Code") as codified in 2006.

[2]  This background is derived from the appendices to the parties' cross-motions for summary judgment and the opinions of the United States Court of Appeals for the Tenth Circuit: United States v. Nacchio, 519 F.3d 1140 (10th Cir. 2008); United States v. Nacchio, 555 F.3d 1234 (10th Cir. 2009) (en banc); United States v. Nacchio, 573 F.3d 1062 (10th Cir. 2009).

The Government objects to Plaintiffs' Exhibits A-I and J, K, N, O, Q, and R, but the Court does not rely on these exhibits in resolving the motions.  The Court only considers Exhibits K, O, Q and R for purposes of jurisdiction.  The Government also objects to Plaintiffs' Exhibit P on relevance grounds.  The Court denies this objection.  Exhibit P, the September 28, 2011 Notice of Qwest Communications Remission, is relevant to the proper legal characterization of Mr. Nacchio's forfeiture and a determination of whether that forfeiture is similar to a fine under § 162(f).  Pls.' Mot. Summ. J. ("Mot.") iii, May 17, 2013; Fed. R. Evid. 401 (2011).

sales plan to sell his Qwest stock and continued to sell his stock until May 29, 2001, when it fell in price.  Id.  As the Tenth Circuit explained:

> One way that a corporate official can dispose of stock without liability for insider trading is to do so pursuant to a fixed sales plan.  Under SEC rules, if a person has no material inside information when he "[a]dopt[s] a written plan for trading securities," and that plan sets fixed rules for when he will buy and sell shares in the future, then his trades are not "on the basis of" inside information even if he later does acquire inside information.  [citation]  Qwest's general counsel, Drake Tempest, was required to approve each stock sales plan entered into by each Qwest officer; doing so required a determination that the officer was not in possession of material nonpublic information at the time he entered into the plan.  Except for sales according to a fixed sales plan, Qwest policy only permitted officers to sell stock during short "trading windows" each quarter immediately after quarterly earnings were announced.  App. 1879.

Id. (first and second alterations in original).

Plaintiffs reported $44,632,464.38 in net gain from these stock sales in their 2001 joint tax return and paid $17,974,832 in taxes on this gain.  Compl. ¶¶ 4, 10; Pls.' Mot. Summ. J. ("Mot.") 13 n.2, May 17, 2013.[3]

## The Government's Civil and Criminal Actions Against Mr. Nacchio

On March 15, 2005, the United States Securities and Exchange Commission ("SEC") initiated a civil action alleging that Mr. Nacchio and other named defendants orchestrated a scheme to defraud the investing public by misrepresenting Qwest's performance and growth in 2001.  Pls.' Mot. Ex. J.  The SEC claimed Mr. Nacchio earned approximately $176.5 million selling Qwest stock while in possession of insider information.  Id. at ¶ 158.

On December 20, 2005, a federal grand jury indicted Mr. Nacchio on 42 counts of insider trading in connection with this conduct.  Def.'s Mot. Ex. 1.  During a 16-day trial in 2007, Mr. Nacchio exercised his Fifth Amendment right against self-incrimination and did not testify.  See Def.'s Mot. Ex. 3 at 23:8-12.  The jury convicted Mr. Nacchio on 19 counts of insider trading relating to stock Mr. Nacchio sold between April 26, 2001 and May 29, 2001.  Def.'s Mot. Ex. 2. The Colorado District Court sentenced Mr. Nacchio to serve 72 months in prison, pay a $19 million fine, and forfeit the gross income Mr. Nacchio derived from insider trading in the amount of $52,007,545.47.  Def.'s Mot. Ex. 4.

A three-judge panel of the United States Court of Appeals for the Tenth Circuit reversed Mr. Nacchio's conviction and sentence.  Nacchio, 519 F.3d at 1169.  On rehearing en banc, the Tenth Circuit reinstated Mr. Nacchio's conviction and remanded the matter to the Tenth Circuit panel for further proceedings on Mr. Nacchio's challenge to his sentence.  United States v. Nacchio, 555 F.3d 1234, 1259 (10th Cir. 2009) (en banc).  On remand, the panel held that the

---

[3]  The $44,632,464.38 forfeiture represented the net profits Mr. Nacchio derived from selling Qwest stock between April 26, 2001 and May 29, 2001.  Pls.' Mot. Ex. L.

District Court erred by requiring Mr. Nacchio to forfeit his gross income rather than his net gain, reversed the sentence, and remanded to the District Court for resentencing.   United States v. Nacchio, 573 F.3d 1062, 1088-90 (10th Cir. 2009).

## Mr. Nacchio's Forfeiture of $44,632,464.38

During Mr. Nacchio's resentencing hearing on June 24, 2010, the District Court resentenced Mr. Nacchio to 70 months in prison, a $19 million fine, and a $44,632,464.38 forfeiture.  Pls.' Mot. Ex. M at 40:2-3, 45:1-4.[4]  While the District Court could not order restitution as a matter of law, it directed that the $19 million fine be deposited into the Crime Victims' Fund to help fund state and local victims' assistance programs.  Id. at 40:6-7, 9-14.  At the conclusion of the resentencing hearing, the prosecution advised the District Court that the Government intended to use Mr. Nacchio's forfeiture "to compensate victims."  Id. at 40:15-16, 48:25-49:5.

## The Government's Remission of Approximately $44 Million Of The Forfeiture To Victims

Because Mr. Nacchio forfeited his gain from insider trading as "property which constitutes and is derived from proceeds traceable to" securities fraud, the forfeited proceeds were subject to remission.  Def.'s Mot. Ex. 9 at 2-3.  The remission administrator retained by the Department of Justice ("DOJ") notified certain victims of the Qwest securities fraud that they were eligible to receive a remission from Mr. Nacchio's forfeiture.  Pls.' Mot. Ex. P.[5]  In a memorandum dated April 17, 2012, DOJ's Chief of the Asset Forfeiture and Money Laundering Section authorized this remission.  Def.'s Mot. Ex. 9 at 3-4.  In a press release dated May 3, 2012, DOJ announced it "ha[d] returned approximately $44 million to [112,210] victims of a securities fraud scheme related to Qwest . . . ."  Def.'s Mot. Ex. 10.

## Plaintiffs' Request For A Refund Of Taxes Paid In 2001

On or about October 6, 2008, Plaintiffs filed a joint income tax return for the 2007 tax year.  Pls.' Mot. Ex. T at 4.  Following Mr. Nacchio's forfeiture, Plaintiffs amended this tax return in March 2009, claiming a $17,999,030.00 credit pursuant to § 1341.  Pls.' Mot. Ex. S at 8, 11.[6]  In a letter dated September 3, 2009, the Internal Revenue Service ("IRS") disallowed

---

[4]  Mr. Nacchio and the prosecution stipulated to the amount of the forfeiture, and the $44,632,464.38 represented Mr. Nacchio's net proceeds from his insider trading.  Pls.' Mot. Ex. L.

[5]  These individuals participated in one of two private securities class action suits:  In re Qwest Commc'ns Int'l Inc. Sec. Litig., No. 01-cv-1451 (D. Colo.) or U.S. Securities and Exchange Commission Fair Fund, SEC v. Qwest Commc'ns Int'l Inc., Civ. A. No. 04-D-2179 (D. Colo.).  Pls.' Mot. Ex. P.

[6]  When they filed an amended return for the 2007 tax year, Plaintiffs failed to deduct $60,081.00 in brokerage fees and erroneously calculated the amount of tax they had paid in 2001 on Mr. Nacchio's gain from insider trading.  Pls.' Mot. 13 n.2.  Thus, Plaintiffs' refund claim in this action is for $17,974,832.00, not $17,999,030.00.  Id.

Plaintiffs' credit, stating that § 1341 can be invoked only after a valid deduction is claimed pursuant to another Code section. <u>Id.</u> at 11. The IRS further stated that because Mr. Nacchio's forfeiture was a penalty for violating the law, it was "not remedial in nature" and a deduction was not permitted under any section of the Code. <u>Id.</u> Plaintiffs appealed this decision. Pls.' Mot. Ex. T. On January 14, 2010, the IRS Appeals Office denied Plaintiffs' refund claim, citing the same grounds for denial that the IRS set forth in its September 3, 2009 letter. Pls.' Mot. Ex. V.

## Discussion

## Summary Judgment Standard

Summary judgment is appropriate where the evidence demonstrates there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims; <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." <u>Liberty Lobby</u>, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit." <u>Id.</u> at 248.

The moving party bears the burden of establishing the absence of any material fact, and any doubt over factual disputes will be resolved in favor of the non-moving party. <u>Mingus Constructors, Inc. v. United States</u>, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once this burden is met, the onus shifts to the non-movant to point to sufficient evidence to show a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor. <u>Liberty Lobby</u>, 477 U.S. at 256-57. A court does not weigh each side's evidence when considering a motion for summary judgment, but "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam)) (omission in original). When opposing parties both move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." <u>Mingus Constructors</u>, 812 F.2d at 1391.

In adjudicating a motion for summary judgment, "the Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues." <u>Mansfield v. United States</u>, 71 Fed. Cl. 687, 693 (2006) (citation omitted). Cross-motions for summary judgment "are not an admission that no material facts remain at issue." <u>Massey v. Del Labs., Inc.</u>, 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citation omitted).

## Section 1341 Refunds Of Taxes Paid On Monies Returned

Plaintiffs contend they are entitled to a refund of $17,974,832 under § 1341. Section 1341 "provides a special rule favorable to the taxpayer" that "applies when a taxpayer repays money in a current year that belongs to someone else, but was money that [the taxpayer] received and included in gross income in a prior year." <u>Culley v. United States</u>, 222 F.3d 1331,

1332 (Fed. Cir. 2000).  The taxpayer must have subjectively believed he had an unrestricted right to the money in the year it was received based on all the facts available that year.  Treas. Reg. § 1.1341-1(a)(2) (2007); Culley, 222 F.3d at 1335 (citing McKinney v. United States, 574 F.2d 1240, 1243 (5th Cir. 1978)).  Further, the taxpayer must be entitled "to a deduction (in excess of $3,000) under another section of the Internal Revenue Code for the loss resulting from" repaying the money.  Culley, 222 F.3d at 1335; see also Griffiths v. United States, 54 Fed. Cl. 198, 202 (2002) ("Section 1341 does not independently create a deduction.") (citation omitted).  If the taxpayer meets the requirements of § 1341, then "the taxpayer 'is entitled to either the equivalent of a refund for income tax paid in the earlier year, or a deduction from income in the year of repayment, whichever is more beneficial to the taxpayer.'"  Pennzoil-Quaker State Co. v. United States, 511 F.3d 1365, 1368 (Fed. Cir. 2008) (quoting Chernin v. United States, 149 F.3d 805, 815 (8th Cir. 1998)).

Here, Plaintiffs submit they are entitled to a refund for taxes they paid in the 2001 tax year because Mr. Nacchio believed he had a claim of right to the gain he later forfeited, Plaintiffs paid taxes on this gain, and the amount forfeited is deductible as a loss or business expense.  The Government argues that Plaintiffs do not qualify for § 1341 relief because both public policy considerations and § 162(f) preclude the deduction.  In addition, the Government claims that because Mr. Nacchio was convicted for acting willfully, knowingly and with the intent to defraud, Plaintiffs cannot prove that Mr. Nacchio believed he had a claim of right to the forfeited funds and are barred from relitigating whether he had such a belief under the doctrine of issue preclusion.

## Mr. Nacchio's Forfeiture Is A Deductible Loss Under § 165

Plaintiffs seek to deduct Mr. Nacchio's forfeiture as a loss under § 165.  Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise."  Under § 165(c)(2), an individual may deduct losses from a for-profit transaction unconnected to a business or trade.

The Government does not dispute that Mr. Nacchio's forfeiture is a loss under § 165.  See, e.g., Stephens v. Comm'r, 905 F.2d 667, 670 (2d Cir. 1990) (stating that a forfeiture paid as restitution is a loss under § 165); Holt v. Comm'r, 69 T.C. 75, 78-79 (1977) (concluding that property forfeited pursuant to a taxpayer's guilty plea is properly characterized as a loss item), aff'd per curiam, 611 F.2d 1160 (5th Cir. 1980).  Instead, the Government contends the forfeiture is not deductible under § 165 because the deduction "would contravene public policy by 'reducing the sting' of the forfeiture penalty."  Def.'s Mot. 19 (citation omitted).  Specifically, the Government argues that allowing Plaintiffs to deduct the amount Mr. Nacchio forfeited would frustrate the policy in the federal criminal code prohibiting deception, misrepresentation and fraud in connection with the purchase or sale of any security and diminish Mr. Nacchio's punishment.  Id. at 22.  In pressing this argument, the Government aims to both tax Mr. Nacchio and his wife on income they did not realize and to broaden the public policy grounds for disallowing the deduction of forfeitures.

As the Supreme Court recognized in Commissioner v. Tellier, "the federal income tax is a tax on net income, not a sanction against wronging," a "principle [that] has been firmly imbedded in the tax statute from the beginning."  383 U.S. 687, 691-92 (1966) ("[T]he object of

[the income tax] bill is to tax a man's net income; that is to say, what he has at the end of the year after deducting from his receipts his expenditures or losses.  It is not to reform men's moral characters; that is not the object of the bill at all." (first alteration in original) (quoting 50 Cong. Rec. 3849 (1913)).  In the instant case, there is no reason to compound Mr. Nacchio's criminal punishment with a tax burden Congress has neither expressly nor impliedly directed.  As the Government recognizes, Mr. Nacchio's forfeiture is a loss.  The proceeds from Mr. Nacchio's insider trading evaporated -- they were disgorged.  Yet, the Government seeks to tax these proceeds not on the ground that they are income, but on an amorphous notion that the public policy against securities fraud must prevent the deductibility of monies that were received due to insider trading even though the monies were disgorged.

Applying public policy to preclude a deduction here would not comport with precedent.  A deduction is permitted "unless it is clear that the disallowance is a device to avoid the consequence of violations of a law" or "otherwise contravenes the federal policy expressed in a statute or regulation . . . ."  Comm'r v. Sullivan, 356 U.S. 27, 29 (1958).  "Only where the allowance of a deduction would [immediately and severely] 'frustrate sharply defined national or state policies proscribing particular types of conduct' [has the Supreme Court] upheld its disallowance."  Tellier, 383 U.S. at 694 (quoting Comm'r v. Heininger, 320 U.S. 467, 473 (1943)).  For example, in Tank Truck Rentals, Inc. v. Commissioner and Hoover Motor Express Company v. United States, the Supreme Court upheld the disallowance of deductions claimed by taxpayers for fines and penalties imposed for violating state penal statutes because such deductions "would have directly and substantially diluted the actual punishment imposed."  Tellier, 383 U.S. at 694 (citing Tank Truck Rentals, 356 U.S. 30, 34-35 (1958); Hoover Motor, 356 U.S. 38, 40 (1958)).

Allowing Plaintiffs to deduct the monies forfeited would neither "immediately and severely frustrate sharply defined policies" proscribing insider trading nor "directly and substantially dilute the punishment imposed."  In Stephens v. Commissioner, the United States Court of Appeals for the Second Circuit allowed a deduction for a loss where the taxpayer had paid taxes on funds he had embezzled, but repaid as restitution, reasoning that the deduction did not severely and immediately frustrate public policy because the taxpayer had received a "stern" sentence.  905 F.2d at 671.  Here, as in Stephens, Mr. Nacchio's punishment was stern; it included a 70-month jail sentence, a $19-million fine, as well as a forfeiture of his gain.

Allowing the deduction would not increase the odds in favor of insider trading or destroy the effectiveness of the securities laws.  The law under which Mr. Nacchio was convicted, 15 U.S.C. § 78j, has ample weapons to combat insider trading without adding taxation of unretained income to the arsenal.  See 15 U.S.C. § 78ff (2006) (imposing a fine, imprisonment or both for insider trading).  Indeed, because Plaintiffs paid over $17.9 million in taxes on a $44.6 million gain they did not retain, disallowing Plaintiffs' loss deduction would impose a punitive tax consequence uncalled for by criminal statute, the Internal Revenue Code, or precedent.  See Tellier, 383 U.S. at 694-95 ("We decline to distort the income tax laws to serve a purpose for which they were neither intended nor designed by Congress.").  Disallowing the deduction would result in a "double sting" by requiring the taxpayers to both make restitution and pay taxes on income they did not retain.  See Stephens, 905 F.2d at 671.  In sum, the public policy against insider trading does not prevent the deduction of the amount forfeited here as a loss under § 165.

**Section 162(f) Does Not Prohibit The Deduction Of Mr. Nacchio's Forfeiture**

The Government further contends that § 162(f) prohibits Plaintiffs' deduction.  Section 162(f) provides, "No deduction shall be allowed under [§ 162(a) for a business expense] for any fine or similar penalty paid to a government for the violation of any law."  In codifying the public policy exception to deductibility of business expenses in § 162(f), Congress limited the exception to illegal "bribes, kickbacks, and other illegal payments (subsection 162(c)), fines or similar penalties paid to a government for the violation of any law (subsection 162(f)), and a portion of treble damage payments under the antitrust laws (subsection 162(g))."  Stephens, 905 F.2d at 672 (stating that "Congress intended these 'provision[s] for the denial of the deduction for payments in these situations which are deemed to violate public policy . . . to be all inclusive.'" (alterations in original) (citation omitted)).

The Government attempts to extend § 162(f)'s prohibition for § 162(a) business expense deductions to § 165 losses by invoking Treasury Regulations §§ 1.162-21 and 1.165-1.  Section 1.162-21(b)(1)(i) states that a § 162(f) fine or similar penalty includes an amount paid pursuant to a conviction in a felony or misdemeanor criminal proceeding, and § 1.165-1(a) adds that a § 165 deduction is subject to any provision of the Code that prohibits or limits a deduction. From this, the Government concludes that § 162(f) would encompass a § 165 loss even though § 162(f) only applies to deductions for business expenses and, as the Government acknowledges, "Congress did not explicitly amend § 165 to include a similar provision . . . ."  Def.'s Mot. 19, 23.

As the United States Court of Appeals for the Second Circuit recognized in Stephens, whether or not these regulations mandate the application of § 162(f) to § 165, it is appropriate to take into account the public policy considerations embodied in § 162(f) in assessing deductibility under § 165.  The Stephens Court stated:

> Though Congress, in amending Section 162, did not explicitly amend Section 165, we believe that the public policy considerations embodied in Section 162(f) are highly relevant in determining whether the payment to Raytheon was deductible under Section 165.  Congress can hardly be considered to have intended to create a scheme where a payment would not pass muster under Section 162(f), but would still qualify for deduction under Section 165.

905 F.2d at 672.  Thus, the Stephens Court looked to § 162(f) "as an aid in applying Section 165," and not as an additional independent statutory basis for disallowing the deduction.  Id.

In invoking § 162(f) to preclude the deduction, the Government contends that Mr. Nacchio's forfeiture comes within this section's prohibition against deducting a "fine or similar penalty" because the forfeiture was imposed to punish Mr. Nacchio as a result of his conviction, and thus can be characterized as a penalty.  Merely characterizing Mr. Nacchio's forfeiture as a "penalty," however, would not bring it within § 162(f)'s narrow prohibition against the deduction of the type of penalty that is "similar to" a fine.  See S. Pac. Transp. Co. v. Comm'r, 75 T.C. 497, 651 (1980) ("[T]he literal language of section 162(f) implies the existence of penalties imposed by law which are not within the intended scope of section 162(f) because Congress must have had some reason for including the word 'similar' in the statute.").  Mr.

Nacchio was ordered to forfeit insider trading gains in addition to paying the $19 million fine the Colorado District Court imposed.  See Pls.' Mot. Ex. M at 13:15-22, 15:2-10, 41:13-44:3. Unlike the fine, which was clearly punitive and was paid from assets unrelated to insider trading, the forfeiture exclusively represented the disgorgement of Mr. Nacchio's illicit net gain from insider trading.

While the Colorado District Court mandated that Mr. Nacchio's $19 million fine be deposited into a general Crime Victims' Fund for state and local victims' assistance programs, the Court did not similarly order that the forfeiture be deposited into this fund.  Rather, Mr. Nacchio's forfeiture served to compensate victims of the Qwest securities fraud.  When counsel for Mr. Nacchio inquired into the distribution of the forfeiture during the June 24, 2010 resentencing hearing, the prosecution advised the District Court that a separate process would apply to the forfeiture to "compensate victims" of the Qwest securities fraud.  Id. at 48:17-49:5. In keeping with this statement, the DOJ remission administrator notified certain victims that they were eligible to receive a remission from Mr. Nacchio's forfeiture, and on April 17, 2012, DOJ authorized the remission of approximately $44 million of Mr. Nacchio's $44,632,464.38 forfeiture to compensate 112,210 victims.  Pls.' Mot. Ex. P; Def.'s Mot. Ex. 9 at 3-4, Ex. 10.  As such, contrary to the Government's assertion here, Mr. Nacchio's forfeiture was used for a compensatory purpose and was not a "similar penalty" to his fine under § 162(f).

In sum, in analyzing Plaintiffs' refund claim under § 1341, the Court holds that Plaintiffs may deduct Mr. Nacchio's forfeiture as a loss under § 165.[7]  However, this does not end the matter as Plaintiffs must also show that Mr. Nacchio believed he had an unrestricted right to the trading gain in 2001.

**Whether Mr. Nacchio Believed He Had A Claim Of Right To The Gain He Forfeited Is A Genuine Issue Of Material Fact**

Invoking issue preclusion, the Government argues that Plaintiffs are barred from litigating whether Mr. Nacchio believed he had a claim of right to the gain he forfeited because a

---

[7]  Plaintiffs also seek to deduct Mr. Nacchio's forfeiture under § 162 as a business expense "because the amount forfeited represented gain from Mr. Nacchio's exercise of Qwest options, that is, compensation for carrying out his ordinary trade or business as the CEO of Qwest."  Pls.' Reply 3 n.2, July 18, 2013.  The Court does not agree.  To qualify for a deduction under § 162(a), an item must be an ordinary and necessary business expense paid or incurred during the taxable year and used for carrying on any trade or business.  INDOPCO, Inc. v. Comm'r, 503 U.S. 79, 85 (1992) (citations and quotation marks omitted).  To be "necessary," the expense must at a minimum "be 'appropriate and helpful' for the 'the development of the [taxpayer's] business.'"  Comm'r v. Tellier, 383 U.S. 687, 689 (1966) (alteration in original) (quoting Welch v. Helvering, 290 U.S. 111, 113 (1933)); see also Danville Plywood Corp. v. United States, 899 F.2d 3, 7 (Fed. Cir. 1990).  To qualify as "ordinary," the transaction giving rise to the expense must be "of common or frequent occurrence in the type of business involved."  Danville, 899 F.2d at 7 (citing Deputy v. du Pont, 308 U.S. 488, 495 (1940); Welch, 290 U.S. at 113-14).  Mr. Nacchio's forfeiture arose from his 2007 conviction for insider trading, not from carrying out business as Qwest's CEO.

jury convicted him of engaging in insider trading willfully, knowingly and with the intent to defraud. As the proponent of this issue preclusion defense, the Government must establish that this action presents an issue identical to that previously adjudicated in the criminal case. Bourns, Inc. v. United States, 210 Ct. Cl. 642, 654 n.6 (1976) (citation omitted).

The issue governing deductibility under § 1341 is whether, in including the trading gains in gross income for 2001, Mr. Nacchio believed that he had "an unrestricted right to such item." This is a subjective standard that hinges on the taxpayer's belief during the year of inclusion. See, e.g., Culley, 222 F.3d at 1336 ("[T]he issue presented by § 1341 is not simply whether Mr. Culley obtained funds unlawfully, but whether it appeared to him that he had an unrestricted right to those funds."); Cinergy Corp. v. United States, 55 Fed. Cl. 489, 504 n.23 (2003) ("[T]he taxpayer must have had a semblance of an unrestricted right to the item in the inclusion year . . . ." (citation omitted)).

The precise issue of whether Mr. Nacchio himself subjectively believed he had an unrestricted right to the funds he received from trading in 2001 was not adjudicated in the criminal proceeding. Mr. Nacchio did not plead guilty to insider trading -- an admission which could result in a finding that he had subjectively believed he was not entitled to the gain. See Culley, 222 F.3d at 1335-36 (holding that taxpayer who pled guilty to mail fraud could not have subjectively believed that he had an unrestricted right to the fraudulently obtained proceeds); Kraft v. United States, 991 F.2d 292, 297-99 (6th Cir. 1993); Wang v. Comm'r, 76 T.C.M. (CCH) at *8 (finding that a taxpayer who plead guilty to insider trading was not entitled to § 1341 relief because he knowingly received illegally obtained income).

As the Federal Circuit recognized in Culley, the issue "is not simply whether [the taxpayer] obtained funds unlawfully, but whether it [subjectively] appeared to him that he had an unrestricted right to those funds." 222 F.3d at 1336; see also McKinney, 574 F.2d at 1242-43 (stating that income included under a § 1341 claim of right means the taxpayer received the income with the semblance of a bona fide claim of right). Although the jury in the criminal trial believed Mr. Nacchio was guilty of willfully engaging in insider trading, this does not equate to a finding of what Mr. Nacchio himself believed. Mr. Nacchio professed his innocence, and nothing in this Court's record from the criminal proceeding sheds any light on the bona fides of Mr. Nacchio's belief. Indeed, Mr. Nacchio did not testify in his criminal trial, invoking his Fifth Amendment privilege against self-incrimination. Mr. Nacchio's subjective belief as to his claim of right to the forfeited gain was not adjudicated in his criminal trial, and Plaintiffs are not barred from litigating his belief under the doctrine of issue preclusion. So too, Mr. Nacchio's subjective belief as to his entitlement to the trading gains in 2001 is a question of material fact that cannot be resolved on summary judgment.

## **Conclusion**

Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** in part.  Defendant's Motion for Summary Judgment is **DENIED**.  The Court will convene a telephonic status conference to schedule further proceedings on **March 20, 2014 at 2:00 p.m. EST.**


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**