IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Civil No. 12-20 T
Judge Mary Ellen Coster Williams

JOSEPH P. NACCHIO and
ANNE M. ESKER

                        Plaintiffs,

v.

THE UNITED STATES OF AMERICA

                        Defendant.

_____

**JOINT MOTION FOR ENTRY OF STIPULATED FINAL JUDGMENT**
_____

Plaintiffs, Joseph P. Nacchio and Anne M. Esker, and Defendant, the United States of America (collectively the "Parties"), jointly request that this Court now enter final judgment in favor of Plaintiffs, based on and in accordance with the "Stipulations of the Parties" set forth further below. A proposed order and form of final judgment are attached.

**BACKGROUND**

Plaintiffs filed the complaint in this case on January 10, 2012. On April 10, 2012, the United States filed its answer. On March 1, 2013, the United States filed a motion for summary judgment, and, on May 17, 2013, Plaintiffs filed a cross-motion for partial summary judgment. On March 12, 2014, the Court issued an Opinion and Order denying

the United States' motion for summary judgment and granting, in part, Plaintiffs' motion for partial summary judgment. On June 25, 2014, the Court denied a motion for reconsideration filed by the United States. On September 4, 2014, the Court issued a scheduling order for discovery and trial.

**PLAINTIFFS' STATEMENT**

Plaintiffs Joseph P. Nacchio and Anne M. Esker contend that if this case were to proceed to trial, Plaintiffs would prove that when, in April and May of 2001, Mr. Nacchio exercised options to purchase shares of stock in Qwest Communications International, Inc., sold those shares and paid taxes on the realized net gain, it appeared to Mr. Nacchio that he had an unrestricted right to the sales proceeds. In support of the foregoing, at trial, Mr. Nacchio would present his sworn testimony, and Plaintiffs would introduce documentary evidence, and call expert and fact witnesses who would give corroborative testimony, concerning (among numerous other things) the following. Prior to and during April and May of 2001, when Mr. Nacchio executed options to purchase shares of Qwest stock and sold the resulting shares of stock, he was privy to unclassified and then-classified information concerning Government contracts for which Qwest was under consideration and which he reasonably expected would be awarded to Qwest. Those contracts included, among others, an NSA project called Groundbreaker, which was to be fully operational in November 2001, from which Mr. Nacchio expected that Qwest would derive $50-$100 million in revenue; the Government's $2 billion GovNet contract, worth a minimum of $50 million to Qwest; a Government contract concerning South America and the Pacific Rim worth $100-$200 million to Qwest; a European DISA project worth

$100-$200 million to Qwest; and a $400 million enhancement to an existing Government contract with Qwest. Mr. Nacchio would testify that he reasonably expected that revenue from these (and other) Government contracts would be realized by Qwest in 2001, and even if there were to be any possible shortfall in Qwest's publicly forecasted 2001 year-end revenue, the revenue from those Government contracts would more than make up for it.

Mr. Nacchio would also testify that Qwest was excluded from such contracts because at a February 2001 meeting with the NSA at its Fort Meade, Maryland headquarters, Mr. Nacchio refused to agree to a Government request for Qwest's participation in a government program that Mr. Nacchio believed was illegal, unless the Government could provide him with proper legal authority for what was being asked of him and of Qwest. Over the ensuing months, Governmental representatives repeatedly made that same request of James F.X. Payne (Senior Vice-President and head of Qwest's Government Group), who likewise refused.

Mr. Nacchio would further testify that contemporaneous with his many meetings and discussions in the first half of 2001 with Government agencies regarding then-classified contract work with Qwest, were the repeated verbal and written assurances of Robin Szeliga, Qwest's Chief Financial Officer that Qwest would achieve its stated financial projections. Notably, not having Mr. Nacchio's security clearances, in giving such assurances, Ms. Szeliga was unaware of the aforementioned Government contracts or of the additional revenue from them that Mr. Nacchio believed would be realized by Qwest in 2001.

Although in April and May of 2001, Mr. Nacchio reasonably believed that, as a result of additional revenue from the expected government contracts, Qwest would more than achieve its publicly-stated year-end 2001 revenue forecasts, Mr. Nacchio was not allowed to testify about such then-classified information in the criminal action in which he was ultimately convicted on nineteen of forty-two counts of insider trading, *United States v. Nacchio*, No. 05-cr-00545 (D. Colo.).  Following his 2007 conviction for insider trading, Mr. Nacchio was sentenced to serve seventy-two (72) months in prison, and ordered to pay a fine of $19,000,000 and to forfeit $44,632,464.38, representing the gain from his sales of Qwest stock in 2001 which had served as the basis for the conviction.  It is the net income tax of $17,974,832.00 paid by Plaintiffs on that forfeited gain that is the subject of Plaintiffs' claimed income tax refund and the amount they seek by way of their complaint herein.

The trial court's decision to preclude Mr. Nacchio from introducing into evidence either such then-classified contract information, or information concerning his reasonable belief concerning 2001 revenue resulting from such information, was the culmination of seventeen months of non-public, sealed pre-trial proceedings under the Classified Information Protection Act (CIPA).  In October 2007, shortly after Mr. Nacchio's sentencing, the Government filed and released to the public transcripts of those CIPA proceedings (in redacted form), disclosing material amounts of the very information the Government had sought to bar Mr. Nacchio from using in his defense at trial and which the trial court precluded him from introducing into evidence at trial.

Plaintiffs, by entering into the "Stipulations of the Parties" set forth below, do not in any way concede, accept, adopt, or agree to any of the assertions contained in the Defendant's Statement below. Among other things, Plaintiffs disagree with the Defendants' characterization of what classified information the district court did or did not preclude Mr. Nacchio from testifying about or introducing into evidence at his criminal trial; rather, the transcripts of the referenced proceedings under the Classified Information Producedures Act (CIPA), Pub. L. 96-456, 94 Stat. 2025 (1980) (codified at 18 U.S.C. App. 3), speak for themselves. Moreover, over fourteen years have passed since the underlying events occurred. Consequently, aside from the information that was the subject of the Defendant's post-trial release and disclosure of previously classified information, to the extent that additional information that was classified at the time of trial has since become or would be declassified by the time of a trial herein, that information would also be the subject of testimonial and documentary evidence proffered at a trial in this action by or on behalf of Plaintiffs.

### DEFENDANT'S STATEMENT

The United States, by entering into the "Stipulations of the Parties" set forth below, does not in any way concede, accept, adopt, or agree to any of the assertions contained in the foregoing Plaintiffs' Statement. Among other things, the United States disagrees with the general assertion that Mr. Nacchio was precluded from testifying about or introducing classified information at his criminal trial. Pursuant to provisions of the Classified Information Procedures Act (CIPA), Pub. L. 96-456, 94 Stat. 2025 (1980) (codified at 18 U.S.C. App. 3), the district court, prior to trial, authorized Mr. Nacchio to

introduce any relevant and admissible classified information through substituted details because the court determined that doing so would "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." *See* CIPA § 6(c). In fact, the only classified information that Mr. Nacchio was *not* permitted to introduce was that found by the district court to be irrelevant and inadmissible under the Federal Rules of Evidence, which included the information allegedly gathered by Mr. Nacchio during the February 2001 meeting referenced in the Plaintiffs' Statement. *United States v. Joseph P. Nacchio*, Case No. 1:05-cr-545 (D. Colo.), Doc. 195, 513.

The United States respectfully disagrees with the Court's determinations in its March 12, 2014, order that (1) the forfeiture ordered as part of Mr. Nacchio's criminal sentence is deductible for federal income tax purposes, and (2) Mr. Nacchio's criminal conviction for securities fraud does not preclude him from meeting the requirements of 26 U.S.C. ("I.R.C.") § 1341(a)(1). The United States is entering into the "Stipulations of the Parties" below in order to expedite its appeal of these issues, and to preserve the parties' and the Court's resources.

**STIPULATIONS OF THE PARTIES**

The Parties stipulate to the entry of final judgment in favor of Plaintiffs on the following terms:

1.      The Parties stipulate to the entry of judgment in favor of Plaintiffs for a tax refund in the amount of $17,974,832 due for the 2007 tax year, pursuant to Section 1341 of the Internal Revenue Code, plus interest as provided by law (including such pre-

judgment and post-judgment interest as provided by law) (hereinafter, the "Judgment"). The United States reserves its right to appeal from the Judgment as to the following issues, which this Court's March 12, 2014, order resolved in favor of Plaintiffs: (1) whether the forfeiture ordered as part of Plaintiff Joseph P. Nacchio's criminal sentence in *United States v. Joseph P. Nacchio*, Case No. 1:05-cr-545 (D. Colo.), is deductible for federal income tax purposes, and (2) whether Mr. Nacchio's criminal conviction in *United States v. Joseph P. Nacchio*, Case No. 1:05-cr-545 (D. Colo.), precludes him, under the doctrine of issue preclusion, from meeting the requirement of I.R.C. § 1341(a)(1) that (for purposes of applying § 1341) it must have "appeared that the taxpayer had an unrestricted right" to the income at issue. Plaintiffs reserve the right to challenge on appeal this Court's determination that the forfeited funds were deductible to Mr. Nacchio under I.R.C. § 165 but were not deductible to him as a business expense under I.R.C. § 162, and to argue on appeal that the forfeited funds were deductible to Mr. Nacchio specifically as a business expense under I.R.C. § 165(c)(1) as well as under I.R.C. § 165(c)(2). The Parties reserve the right to exhaust all rights on appeal, and to pursue any remand (subject to Paragraph 6, *infra*), with respect to these reserved issues.

2.  If this Court's determination that the forfeiture is deductible for federal income tax purposes is reversed on appeal, then the Judgment will be vacated, and judgment will instead be entered for the United States, and the complaint dismissed with prejudice.

3.  If this Court's determination that the forfeiture is deductible for federal income tax purposes is affirmed, but this Court's determination that Mr. Nacchio's

7

conviction does not preclude him from meeting the requirements of I.R.C. § 1341(a)(1) is reversed, then the Judgment will be adjusted as follows:

        a.    If it is determined that the deduction is allowable under I.R.C. § 162 or I.R.C. § 165(c)(1), then the amount of Judgment will be adjusted to an overpayment of tax for 2007 in the amount of $1,038,695 with such carry-backs and carry-forwards as allowed under I.R.C. § 172, plus interest as provided by law (including such pre-judgment and post-judgment interest as provided by law); except if it is determined that the deduction is a "miscellaneous itemized deduction" within the meaning of I.R.C. §§ 67(b) and 56(b)(1)(A)(i), and that I.R.C. § 56(a)(4) does not apply to override the application of I.R.C. § 56(b)(1)(A)(i), then the amount of the overpayment will be $6,370 with such carry-backs and carry-forwards as allowable (subject to the alternative minimum tax provisions, if applicable).

        b.    If it is determined that the deduction is allowable under I.R.C. § 165(c)(2), but not under I.R.C. § 162 or § 165(c)(1), then the amount of Judgment will be reduced to an overpayment of tax for 2007 in the amount of $6,370, plus interest as provided by law (including such pre-judgment and post-judgment interest as provided by law).

    4.    If this Court's determination that the forfeiture is deductible for federal income tax purposes is affirmed (because it is determined that the forfeiture is deductible under either I.R.C. § 165 or § 162), and this Court's determination that Mr. Nacchio's conviction does not preclude him from meeting the requirements of I.R.C. § 1341(a)(1) is also affirmed, then the Judgment will remain in place.

5.	The Parties reserve the right to seek allowable costs and fees, including attorneys' fees, in addition to the relief that is to be included in the final judgment entered pursuant to the terms of these stipulations.

6.	By entering into these stipulations, the United States intends to, and does hereby, waive its right to a trial at any time in this case, on any issue of fact, concerning the question whether (absent issue preclusion) Plaintiffs satisfy the requirement of I.R.C. § 1341(a)(1) that it must have "appeared" to Mr. Nacchio that he had an "unrestricted right" to the income at issue. The United States reserves all rights with respect to its argument, reserved for appeal, that Plaintiffs cannot satisfy this very requirement based on Mr. Nacchio's conviction in *United States v. Joseph P. Nacchio*, Case No. 1:05-cr-545 (D. Colo.), and application of the doctrine of issue preclusion based on that conviction.

7.	The Parties stipulate and agree that Plaintiff Anne M. Esker is a named party to this case, and is included in the proposed judgment, by virtue of her having filed a joint income tax return with her husband, Plaintiff Joseph P. Nacchio, for tax year 2007, and that Ms. Esker does not have an interest that is separate or independent from Mr. Nacchio's own interest in the refund claim at issue in this case.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>s/ William D. Lipkind<br>WILLIAM D. LIPKIND<br>THOMAS A. GENTILE<br>Lampf, Lipkind, Prupis & Petigrow<br>80 Main Street<br>West Orange, New Jersey 07052<br>Telephone: (973) 325-2100<br>Facsimile: (973) 325-2839<br>Email: lipkind@llpplaw.com<br>       gentile@llpplaw.com<br>Attorneys for Plaintiffs</td><td>s/ Jacob Christensen<br>JACOB E. CHRISTENSEN<br>Attorney of Record<br>U.S. Department of Justice<br>Tax Division<br>Court of Federal Claims Section<br>Post Office Box 26<br>Ben Franklin Post Office<br>Washington, D.C. 20044<br>Voice:  (202) 307-0878<br>Fax:  (202) 514-9440<br>Email:  jacob.e.christensen@usdoj.gov<br><br>CAROLINE D. CIRAOLO<br>  Acting Assistant Attorney General<br>DAVID I. PINCUS<br>  Chief, Court of Federal Claims Section<br><br>Attorneys for Defendant</td></tr>
</table>

Dated:  April 21, 2015

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Civil No. 12-20 T
Judge Mary Ellen Coster Williams

JOSEPH P. NACCHIO and
ANNE M. ESKER

                Plaintiffs,

v.

THE UNITED STATES OF AMERICA

                Defendant.

_____

### PROPOSED ORDER
_____

Plaintiffs, Joseph P. Nacchio and Anne M. Esker, and Defendant, the United States of America (collectively the "Parties"), having jointly moved for entry of final judgment in favor of Plaintiffs, and the Court having reviewed the terms of the Parties' Joint Motion for Entry of Stipulated Final Judgment in this matter, it is

On this         day of                     , 2015, hereby

**ORDERED** that the Parties' Joint Motion for Entry of Stipulated Final Judgment is **GRANTED**; and it is further

**ORDERED** that, pursuant to Rule 58 of the Rules of the Court of Federal Claims, and the Parties' stipulations set forth in their Joint Motion For Entry of Stipulated Final Judgment in this case filed with the Court and incorporated herein, the Clerk is directed

to enter judgment, in the form annexed hereto, in favor of Plaintiffs for a tax refund in the amount of $17,974,832 due for the 2007 tax year, pursuant to Section 1341 of the Internal Revenue Code, plus interest as provided by law (including such pre-judgment and post-judgment interest as provided by law).  The Parties reserve all rights to appeal and to seek allowable costs and fees.

**IT IS SO ORDERED.**

_____
MARY ELLEN COSTER WILLIAMS
Judge of the U.S. Court of Federal Claims

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

Civil No. 12-20 T
Judge Mary Ellen Coster Williams

JOSEPH P. NACCHIO and
ANNE M. ESKER

                Plaintiffs,

v.

THE UNITED STATES OF AMERICA

                Defendant.

_____

**JUDGMENT**
_____

Pursuant to Rule 58 of the Rules of the Court of Federal Claims, and subject to the parties' stipulations contained in their Joint Motion For Entry of Stipulated Final Judgment, the terms of which are incorporated fully herein, final judgment in favor of Plaintiffs, Joseph P. Nacchio and Anne M. Esker, and against Defendant, the United States of America, is hereby entered for a tax refund in the amount of $17,974,832 due for the 2007 tax year, pursuant to Section 1341 of the Internal Revenue Code, plus interest as provided by law (including such pre-judgment and post-judgment interest as provided by law).  The parties have reserved all rights to appeal and to seek allowable costs and fees.

                                              _____
                                              Clerk of the Court